## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANN MARIE HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 20-cv-00874-RDB |
| | ) | |
| ENOCH PRATT FREE LIBRARY,  et al., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

Defendants, Enoch Pratt Free Library ("EPFL"/"Pratt"/"Enoch"), and the Mayor and City Council of Baltimore City ("MCCB"), herein Jointly ("the City"), through undersigned counsel, submits this Memorandum of Law in support of the Motion for Summary Judgment, and states as follows:

### PROCEDURAL HISTORY

This is an action brought by current employee Ann Marie Harvey ("Plaintiff") for a single count of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. and 42 U.S.C. § 1981.

Prior to instituting this Complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on ("EEOC") on December 17, 2019, alleging that she had been discriminated against based on race, national origin, retaliation and age.   *See* EEOC Charge of Discrimination, attached hereto as **Exhibit 1.**  On December 30, 2019, the EEOC dismissed the charge and issued Plaintiff a Right to Sue

letter. *See* EEOC Right to Sue, attached hereto as **Exhibit 2**. Plaintiff filed an original complaint[1] which was subsequently amended on July 9, 2020 to allege a single count of retaliation under Title VII and Section 1981. (ECF No. 5). The single count is for retaliation under Title VII and Section 1981. (ECF No. 5). Plaintiff is seeking compensatory damages as well as attorney fees and costs.

The parties have completed discovery and for the reasons set forth below, Defendant is entitled to summary judgment as a matter of law on the Count of retaliation.

### STATEMENT OF FACTS

The Enoch Pratt Free Library, (also referred to as "Enoch", "Pratt"), is divided into two functional Business Organizations; Public Service and Operations.   The President and Chief Executive Officer ("CEO") of the Pratt Library is Heidi Daniel.

*Public Services:*

The Public Services Organization is comprised of three Divisions: Neighborhood Library Services (NLS); Programs and Outreach; and Central Library/State Library Resource Center (Central Library/SLRC). The Public Services Organization is headed by Pratt Deputy Director, Darcell Graham.  Deputy Director Graham reports to CEO Daniel.

Pratt's Neighborhood Library Services, ("NLS") is comprised of twenty-one (21) neighborhood library branches plus a mobile services unit. Moran Depo. Vol II, pgs. 203-205, lns. 2-1, attached hereto as **Exhibit 3**. Pratt's neighborhood branches have varying numbers of branch staff, varying support from community volunteers, varying numbers of part-time or contractual summer workers, and varying size and building footage.  A Librarian Supervisor I ("LSI") serves as a branch manager in each neighborhood branch.

---

[1] Plaintiff's initial complaint alleged four counts of discrimination:  national origin (Title VII and Section 1981); race (Title VII and Section 1981); age (ADEA and Section 1981); retaliation (Title VII and Section 1981).

The LSI reports to a Group Supervisor who in turn reports to the Assistant chief ("deputy chief"). Moran Depo. Vol II, pgs. 203-205, lns. 2-1, attached hereto as **Exhibit 3**. The Assistant/Deputy Chief reports to the Chief of NLS. Moran Depo. Vol II, pgs. 203-205, lns. 2-1, attached hereto as **Exhibit 3**. The Chief of NLS, Herb Malveaux, reports to the Public Services Deputy Director.  Moran Depo. Vol II, pgs. 203-205, lns. 2-1, attached hereto as **Exhibit 3**.

*Operations*:

 The Operations Organization is comprised of four Departments: Facilities Management; Information Technology; Financial Management and Human Resources. See Moran Affidavit, attached hereto as **Exhibit 4**. The Operations Departments are overseen by Pratt Chief Operating Officer Gordon Krabbe. **Exhibit 4**. COO Krabbe reports to CEO Daniel. **Exhibit 4**.

The Facilities Management Department is headed by a Chief of Facilities Management, who oversees such operations as building services, public safety, and security. **Exhibit 4**. Security officers and custodial staff working in NLS branch locations are assigned and supervised by Facilities leadership. **Exhibit 4**.

Human Resources is headed by Chief Robin Moran who oversees Benefits and Compensation, Recruitment, Employee Relations, Staff Development and Training, Volunteer Services, and the Office of Diversity, Equity, and Inclusion. **Exhibit 4**. Although organized under Operations, Human Resources serves the Public Services Organization as well.  The Chief of Human Resources, Robin Moran, has reporting responsibilities as well to CEO Daniel. **Exhibit 4**.

On or about March 10, 1997, Plaintiff was hired by Enoch Pratt as a Young Adult Librarian at the Pennsylvania Avenue Branch. *See* Harvey Depo pgs. 16-17, attached hereto as **Exhibit 5**. In or about 1999, Plaintiff became a Librarian II, an Assistant Manager. Id. In October, 2001, Pratt promoted Plaintiff and transferred her to the Cherry Hill branch as manager. Id..  On or about January 7, 2002, Pratt again promoted Plaintiff, this time to the position of LSI. Harvey Depo. pgs 20-21, lns. 13-2; Harvey Depo. pgs. 33-34, lns. 11-13, attached hereto as **Exhibit 5**. At the same time as this promotion, Pratt also transferred Plaintiff to the Waverly Branch. Harvey Depo. pgs 20-21, lns. 13-2; Harvey Depo. pgs. 33-34, lns. 11-13, attached hereto as **Exhibit 5**. As an LS I, Plaintiff is responsible for day-to-day operations of the branch including attendance monitoring, timekeeping, supervising staff, and community outreach. Harvey Depo. pgs 20-21, lns. 13-2, attached hereto as **Exhibit 5**; Harvey Depo. pgs. 33-34, lns. 11-13, attached hereto as **Exhibit 5**.

In 2013, the Waverly branch closed as it underwent a major renovation. Harvey Depo pgs. 23-24, lns. 8-3, attached hereto as **Exhibit 5**. Pratt transferred Plaintiff to the Northwood Branch during the renovation of the Waverly Branch. Harvey Depo pgs. 23-24, lns. 8-3, attached hereto as **Exhibit 5**. After the reopening of the Waverly Branch in August of 2015, Pratt again transferred Plaintiff to the Waverly Branch. Harvey Depo pgs. 23-24, lns. 8-3, attached hereto as **Exhibit 5**. In December of 2019, Pratt transferred Plaintiff to the Clifton branch. During her tenure with Pratt, Plaintiff has worked in "more than likely all of [Pratt's branch locations]." Harvey Depo. pg. 31, lns. 16-18, attached hereto as **Exhibit 5**. Changes in structure in Pratt leadership is continuous and even extends to positions above Plaintiff's own role, which Plaintiff equates to a game of

"musical chairs." Harvey Depo. pg 25, lns. 11-16, attached hereto as **Exhibit 5**. Pratt's ability to transfer employees extends outside of management and impacts employees at all levels. Even custodial workers are often transferred to different locations within Pratt. Moran Depo. pg. 96, lns. 10-15, attached hereto as **Exhibit 4**. In general, Pratt's policy on transfers provide that "shifts of personnel from one position or one location to another within the same grade or same classification of duties-are made when necessary to meet the needs of the Library as well as for the development and welfare of the staff. Transfers may be initiated by administrative and/or supervisory staff." Transfer Policy, attached hereto as **Exhibit 6**.

From January 7, 2002 to the present, despite no less than four (4) transfers, Plaintiff has always maintained her role and core duties as an LS I. Harvey Depo. pgs 20-21, lns. 13-2, attached hereto as **Exhibit 5**; Harvey Depo. pgs. 33-34, lns. 11-13, attached hereto as **Exhibit 5**; Harvey Depo. pg. 31, lns. 16-18, attached hereto as **Exhibit 5**; Harvey Depo. pg. 78-81, lns. 18-6, attached hereto as **Exhibit 5**. During that time, Plaintiff has not had a decrease in rank, classification, salary, annual vacation days, annual personal leave, or medical benefits, and has not been excluded from applying to a different role or suspended without pay. Harvey Depo. pg. 78-81, lns. 18-6, attached hereto as **Exhibit 5**. Plaintiff has also maintained her supervisory responsibilities throughout her employment and has received annual salary increases. Harvey Depo. pgs. 78-81, lns. 18-6, attached hereto as **Exhibit 5**.

In August of 2016, Plaintiff filed a charge of discrimination with EEOC against Pratt. Harvey Depo. pgs. 35-36, lns. 17-8, attached hereto as **Exhibit 5**. The resulting litigation in that matter began in 2017. *See EEOC v. Enoch Pratt Library*, case no. 1:17-

cv-02860-PX (hereinafter "the EPA Litigation"). From that point forward, Plaintiff alleges that things occurred during her employment regarding the EPA litigation Plaintiff attempts to establish a connection between the EPA litigation and the foundation for her claims in the present litigation. *Am. Compl*. (ECF No. 5). To understand the facts that take place two (2) years later, we need to fast forward to 2019.

In September of 2019, Plaintiff reported an incident of possible sexual harassment between two Pratt employees, neither of whom were Plaintiff. See PLNTF 0081-0082 (2019 Charge of Discrimination), attached hereto as **Exhibit 1**; see also Harvey Depo. pgs. 39-40, lns. 7-2, attached hereto as **Exhibit 5**; Harvey Depo. pgs. 51-53, lns. 1-2, attached hereto as **Exhibit 5**. On September 28, 2019, the alleged victim, a minor employed by Pratt, approached Officer Lolita Little-Staten regarding a communication she had with a male custodian. Harvey Depo. pg 51, lns. 2-4, attached hereto as **Exhibit 5**; September 30, 2019 Email Chain, attached hereto as **Exhibit 7**.

Officer Little-Staten was security personnel posted at the Waverly Branch in 2019. In her role, some of Officer Little-Staten's duties and responsibilities are to "protect the public as well as employees that works inside the Enoch Pratt Free Library" and "to deescalate any situations that may come about." Little-Staten Depo. pg. 16, lns. 4-8, attached hereto as **Exhibit 8**. Additionally, Officer Little-Staten was required "to report any activities that are going to cause any kind of harm, hurt or danger to come upon anyone." Little-Staten Depo. pg. 20, lns. 15-17, attached hereto as **Exhibit 8**. Officer Little-Staten worked close with branch managers on security issues and other issues of concern. Officer Little-Staten Depo pg. 23, lns. 4-8, attached hereto as **Exhibit 8**.

6

Officer Little-Staten was unable to complete an inquiry into the matter because, during the conversation, Plaintiff also began speaking with the minor about the allegation and asked that the minor employee meet with her in her office. Harvey Depo. pg. 51, lns. 4-5, attached hereto as **Exhibit 5**; Def. Answer to Interrog. Attach No. 3.0, attached hereto as **Exhibit 9**; **Exhibit 7**.

Plaintiff went on to demand that Officer Little-Staten stay out of personnel matters in the Waverly Branch, despite Officer Little-Staten's duties to protect employees and report on matters that may harm or hurt employees. Harvey Depo. pg. 51, lns. 19-21, attached hereto as **Exhibit 5**. After meeting with the alleged victim, Plaintiff went on to report the alleged sexual harassment to her supervisors. PLNTF 0051 (Sep 29, 2019 email), attached hereto as **Exhibit 7**. Per policy and her training as a manager, Plaintiff should have reported these allegations directly to human resources. Moran Depo. Vol II Pg. 63, lns. 11-14, attached hereto as **Exhibit 3**; Moran Depo. Vol II, pg. 111, lns. 12-20, attached hereto as **Exhibit 3**. After receiving the report from Plaintiff, Plaintiff's supervisor, Herb Malveaux, then reported the allegations to human resources for their review and investigation. Moran Depo Vol II p. 88, lns. 2-8, attached hereto as **Exhibit 3**; PLNTF 0055, attached hereto as **Exhibit 10**; **Exhibit 7**.

Due to Plaintiff's interjection into Officer Little-Staten's conversation with the alleged victim, Officer Little-Staten did not have an opportunity to receive enough information from the minor on which to complete a report. Instead, Officer Little-Staten reported on the interaction between herself and Plaintiff that day. Def. Answer to Interrog. Attach No. 3.0, attached hereto as **Exhibit 9**. Ultimately, as a result of the investigation done by human resources, while no sexual harassment was found, the

alleged aggressor was moved to a different branch location. Moran Depo. Vol II pgs. 89-90, lns. 10-10, attached hereto as **Exhibit 3**; Moran Depo. pg. 96, lns. 11-13, attached hereto as **Exhibit 3**. This decision was not communicated to Plaintiff because, though the alleged aggressor worked at the branch, he did not report to Plaintiff. Moran Depo. Vol II, pg. 93, lns. 12-20, attached hereto as **Exhibit 3**. Additionally, Plaintiff was not included in the investigation or interviewed during the investigation because she had provided a statement, via email, and no further testimony from Plaintiff was required. Moran Depo. Vol II pgs. 94-96, lns. 22-9, attached hereto as **Exhibit 3**.

In her duties as Chief of Human Resources, Robin Moran is tasked with, among other things, ensuring compliance with Title VII and other human resources policies. Moran Depo. Vol II, Pg. 6-8, lns. 14-1, attached hereto as **Exhibit 3**. Ms. Moran also oversees investigations of allegations of employee misconduct, including allegations of sexual harassment. Moran Depo. Vol II Pg. 49-64, lns. 10-16, attached hereto as **Exhibit 3**. While managers have a responsibility to report allegations of sexual harassment, investigations of such claims are the responsibility of human resources, not individual managers. Moran Depo. Vol. II pg. 49, lns. 10-22, attached hereto as **Exhibit 3**; Moran Depo. Vol II, pg. 111, lns. 12-20, attached hereto as **Exhibit 3**; Moran Depo. Vol II pg. 112, lns. 14-20, attached hereto as **Exhibit 3**; Moran Depo. Vol II., pg. 115, lns. 7-12, attached hereto as **Exhibit 3**. In matters not concerning harassment allegations, managers are expected to work with security personnel to collect information to bring to their human resources professional. Moran Depo. Vol II. pgs. 58 -59, lns. 1-18, attached hereto as **Exhibit 3**; Moran Depo. Vol II pg. 59-60, lns. 14-12, attached hereto as **Exhibit 3**; Moran Depo. Vol II pg 63, lns. 4-14, attached hereto as **Exhibit 3**.

On October 7, 2019, Plaintiff attended a meeting with her supervisors, Zandra Campbell and Herb Malveaux, and Ms. Moran to discuss a separate investigation that Human Resources completed and regarded Plaintiff's work performance and employee interactions. Moran Depo. Vol II pgs. 169-172, lns. 21-12, attached hereto as **Exhibit 3**. In this meeting they discussed issues with Plaintiff's performance, including complaints from customers, complaints from employees, high employee turnover rates, and disputes with customers and employees. Moran Depo. Vol II pgs. 169-172, lns. 21-12, attached hereto as **Exhibit 3**.

On November 27, 2019 Plaintiff attended a meeting with Herb Malveaux, Zandra Campbell, and Robin Moran. At this meeting Plaintiff received a transfer from Waverly to Clifton, a Performance Improvement Plan ("PIP") and a Letter of Expectations. Moran Depo. Vol II, pgs. 183-186, lns. 10-16, attached hereto as **Exhibit 3**; Performance Improvement Plan, attached hereto as **Exhibit 12**; Letter of Expectations), attached hereto as **Exhibit 13**. Plaintiff's transfer to Clifton was for the benefit of Pratt. Moran Depo. Vol. II pg. 188, lns. 1-20, attached hereto as **Exhibit 3**. Based on complaints, Pratt determined that Plaintiff was not a good fit for Waverly, but her talents would be useful elsewhere. Pratt identified Clifton as a location that needed a manager with good community skills and was comfortable with community outreach, both attributes which Plaintiff was known to possess. Moran Depo. Vol. II pg. 188, lns. 1-20, attached hereto as **Exhibit 3**. Additionally, Clifton was scheduled to undergo a renovation, a process which Plaintiff had already handled as a branch manager when Waverly underwent a renovation in 2013. Harvey Depo pgs. 23-24, lns. 8-3, attached hereto as **Exhibit 5**. This transfer also helped to address staffing issues. Moran Depo. pg. 191, lns. 2-17, attached hereto as

**Exhibit 3**. While Plaintiff was not banned from Waverly, management did expect that Plaintiff would inform them and get approval prior to Plaintiff visiting the Waverly branch. Moran Depo. Vol II, pg. 191, lns. 2-17, attached hereto as **Exhibit 3**; Campbell Depo. pgs. 185-186, lns. 15-2, attached hereto as **Exhibit 11**. At no time was Plaintiff requested or pressured to resign. Moran Depo. Vol II, pg. 185, lns. 17-22, attached hereto as **Exhibit 3**.

The Performance Improvement Plan ("PIP"), a rehabilitative tool utilized by management to help improve the performance of an employee, outlined key factors upon which Plaintiff needed to improve. Moran Depo. Vol II, pg. 199, lns. 1-5, attached hereto as **Exhibit 3**; DEF00027, attached hereto as **Exhibit 12**. A PIP is not a disciplinary action. Moran Depo. Vol II, pg 199, lns. 1-5, attached hereto as **Exhibit 3**. Plaintiff's supervisor, Zandra Campbell, prepared Plaintiff's PIP. Campbell Depo. pgs. 185, lns. 5-6, attached hereto as **Exhibit 11**. The factors focused on in Plaintiff's PIP included interpersonal relationships, effective communication, and external and internal customer service. **Exhibit 12**. The PIP outlined a clear action plan as well as deadlines for which Plaintiff to improve. **Exhibit 12**. Ultimately, Plaintiff successfully completed the PIP in the time allotted. Campbell Depo. pg. 196, lns. 6-10, attached hereto as **Exhibit 11**.

To help guide Plaintiff to a successful completion of the PIP, Assistant Chief Zandra Campbell and Chef Herbert Malveaux issued to Plaintiff a Letter of Expectations. **Exhibit 13**. This letter provided clear expectations that Plaintiff was adhere to including following all policies, discussing employee relation issues with leadership prior to addressing it with employees, building working relationships, utilizing the services of the

Employee Assistance Program ("EAP"), and participating in developmental training. **Exhibit 12**.

On December 16, 2019, Deputy Chief Zandra Campbell and Chief Herbert Malveaux planned to meet with Plaintiff at the Clifton Branch location, where Plaintiff was the assigned branch manager. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; December 16, 2019 Email, attached hereto as **Exhibit 15**. Though Pratt assigned Plaintiff to the Clifton Branch, and this meeting was to occur during Plaintiff's work hours, Plaintiff was not at the Clifton Branch during this time. Instead, Plaintiff was at the Waverly Branch attending a holiday program. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; **Exhibit 15**.

Importantly, Plaintiff's supervisors were unaware of her absence from her assigned branch and counseled Plaintiff for failing to inform her supervisors of her planned absence. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; Campbell Depo. pg. 190-191, lns. 4-8, attached hereto as **Exhibit 11**; **Exhibit 15**. As a result, Plaintiff was instructed to request approval in writing before going to the Waverly Branch. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; **Exhibit 15**. At no time did management ban Plaintiff from the Waverly Branch. Campbell Depo. pg. 185, lns. 10-16, attached hereto as **Exhibit 11**; **Exhibit 15**. Management even required that Plaintiff go to Waverly on an occasion in January of 2020 in order to attend a managers' meeting. Campbell Depo. pg. 190-191, lns. 15-4, attached hereto as **Exhibit 11**.

On these facts, Plaintiff contends that she was the victim of retaliation.  The relevant facts and case law, however, do not support her contention and the City is entitled to judgment as a matter of law.

### SUMMARY JUDGMENT STANDARD

The Supreme Court has stated that summary judgment is not disfavored and is to be used whenever appropriate in order to arrive at a just, speedy, and inexpensive resolution of the action.  *Celotex Corp. v. Catrett*, 106 U.S. 317, 327 (1986).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P 56(c).  The burden is on the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  A fact is material for purposes of summary judgment if when applied to the substantive law, it affects the outcome of the litigation.  *Church v. State of Maryland*, 180 F. Supp.2d 708, 715 (D. Md. 2002), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Importantly, the mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion.  *Anderson*, 477 U.S. at 247-48.  Moreover, the non-moving party "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Nor may the non-moving party rest upon unsupported allegations contained in pleadings or elsewhere, but must project "significant probative evidence" to support the allegations.  *Anderson*, 477 U.S. at 249.  Hearsay and self-

serving, uncorroborated assertions are insufficient. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

While the evidence must be viewed in the light most favorable to the non-moving party, the non-moving party is only entitled to the benefit of the doubt for a "reasonable inference." *Hinkle v. City of Clarksdale*, 81 F.3d 416, 421 (4th Cir. 1996); *see also Church*, 180 F. Supp.2d at 715, *citing Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)(stating that the court has an "affirmative obligation . . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial").

**ARGUMENT**

I.   **PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION UNDER TITLE VII AND/OR SECTION 1981**

To make out a prima facie case of retaliation under Title VII or Section 1981, a plaintiff must show that (a) she engaged in protected activity; (b) her employer took an adverse action against her and (c) that a causal connection existed between the protected activity and the adverse employment action. *Finnegan v. Department of Public Safety and Correctional Services, et al.*, 184 F. Supp.2d 457, 463 (D. Md. 2002); *Lewis v. Forest Pharmaceuticals, Inc.*, 217 S. Supp.2d 638, 655 (D. Md. 2002); *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997).

Section 1981 covers discrimination based on race or ethnicity. Plaintiff neither alleges nor even plausibly references any facts in her complaint nor deposition that her allegation of retaliation or allegation of adverse employment action was based on her race or ethnicity.  Plaintiff's claim of retaliation under Section 1981 should be dismissed with prejudice.

A plaintiff may establish a *prima facie case* of retaliation through direct or circumstantial evidence. Where, as here, there is no direct evidence of discrimination, the *McDonnell Douglas* proof-scheme analysis may be used to analyze Plaintiff's claims of discrimination. *McDonald Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Thus, if Plaintiff is able to present a *prima facie* case, the burden of production shifts to the City to demonstrate a non-discriminatory reason for its actions. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). Once the City offers a non-discriminatory reason for its actions, the burden shifts back to Plaintiff to show that the reasons proffered by the City are pre-textural and the true reasons for its actions are discriminatory. *Id*. Importantly, while the burden of production shifts among the parties, the burden of persuasion always remains on the Plaintiff. *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998); *Jeffers v. Thompson*, 264 F.Supp.2d 314, 326-27 (D. Md. 2003) *citing*, *Reeves*, 530 U.S. at 143. The undisputed facts in this case show that Plaintiff cannot meet her burden of production or persuasion.

A.  <u>Plaintiff Cannot Show That She Engaged in Protected Activity.</u>

Protected activity includes: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title (VII.) 42 U.S.C.A. §2000e-3(a); *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 258-259 (4th Cir. 1998); *Chang Lim v. Azar*, 310 F.Supp. 3d 588, 604 (D. Md. 2018); *Frielich v. Upper Chesapeake Health, Inc.* 313 F.3d 205, 216-17 (4th Cir. 2002). Importantly, the claim or participation must involve some protected activity. *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 258-259 (4th Cir. 1998)

14

In the present case, Plaintiff alleged that she engaged in protected activity in August 2016, September 2017 and September 2019.  The City argues instead that even considering those incidents, Plaintiff cannot establish a *prima facie* case of retaliation.

   *1.   The August 10, 2016/September 2017 Charge of Discrimination and Litigation*

Plaintiff asserts that on August 10, 2016, she filed a charge of discrimination against Defendants alleging discrimination and that her EEOC charge became the basis of a lawsuit filed by the EEOC on behalf of Plaintiff against Defendants in September 2017. *Am. Compl.* ECF 5 ¶10. While Plaintiff's 2016 charge of discrimination did not materialize into a separate Complaint, the EEOC did 'step' in on behalf of five claimants including Plaintiff to assert a single count under the Equal Pay Act in its lawsuit filed on September 27, 2017.

Plaintiff herself did not file the lawsuit in 2017. Instead, the lawsuit was filed by the EEOC on behalf of five (5) plaintiffs, including Plaintiff. However, assuming that Plaintiff did engage in a protected activity when the EEOC filed the lawsuit, that filing does not constitute a continuing protected activity. *Pepper v. Precision Valve Corp.*, 526 Fed.Appx. 335, 337 (4th Cir. 2013)(finding no causal connection where there was a ten month lapse between plaintiff's filing of a lawsuit and his termination). The filing of a lawsuit is a protected activity, but not the continuing pursuit of the lawsuit. *Pepper v. Precision Valve Corp.*, 526 Fed.Appx. 335, 337 (4th Cir. 2013). There is no correlation between Plaintiff's EPA Litigation and her alleged adverse action. The caselaw is clear that with sufficient time, two (2) years in this case, that the taint is attenuated.

   *2.   Plaintiff's Report of Officer Little-Staten*

Plaintiff also asserts that she engaged in protected activity by reporting and complaining about the interference of Officer Little-Staten during her investigation. *Am. Compl.* ECF 5 ¶26. The substance of this allegation is not that anyone was preventing her from participating in a protected activity. Her issue was that Officer Little-Staten should not have been involved. **Exhibit 10**. Whether she engaged in protected activity is questionable. However, it is unnecessary to consume much debate on this prong because she so clearly cannot meet the later two prongs of her case.

    B.  <u>Plaintiff Failed to Allege An Adverse Employment Action</u>

Plaintiff claims the following as adverse employment actions, none of which are adverse employment actions.

    *1)  Pratt Did Not Ban Plaintiff From the Waverly Branch and Even If It Did, It Was Not An Adverse Employment Action*

Plaintiff claims that Pratt "banned Plaintiff from entering the Waverly Branch." *Am. Compl.* (ECF No. 5) ¶ 27. Pratt never banned Plaintiff from entering the Waverly branch. In fact, even after Plaintiff was transferred to the Clifton branch, management required Plaintiff to attend a manager's meeting at the Waverly branch.

It is undisputed that Pratt transferred Plaintiff from the Waverly branch to the Clifton branch in late 2019. On December 16, 2019, Assistant Chief Zandra Campbell and Chief Herbert Malveaux were making visits to various Pratt branch locations and visiting with branch managers. Campbell Affidavit, attached hereto as **Exhibit 14**; Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; **Exhibit 15**. Campbell and Malveaux were on their way to visit Plaintiff at her assigned branch, the Clifton branch. **Exhibit 14**; Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as

**Exhibit 11**; **Exhibit 15**. Though Plaintiff should have been at the Clifton branch performing her duties as a branch manager during this time, Plaintiff was instead at the Waverly branch. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; **Exhibit 15**. Plaintiff did not inform her supervisors, Malveaux and Campbell, that she would be away from her branch. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; **Exhibit 15**. Once Campbell and Malveaux learned that Plaintiff was not at Clifton, they rerouted to the Waverly branch in order to meet with Plaintiff there. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; **Exhibit 15**. As a result of Plaintiff leaving her post, Campbell reestablished the expectation that Plaintiff get management approval before going to the Waverly branch. **Exhibit 14**; Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; **Exhibit 15**.

Though Plaintiff had to report when she would visit Waverly, she was never banned from Waverly. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; **Exhibit 15**. In fact, Plaintiff was required to attend a manager's meeting at Waverly in January of 2020. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**. Plaintiff received the email from Campbell on December 16, 2019 informing her of the new process. It is important to note that Plaintiff did not respond to Campbell, but to her own personal email address apparently telling herself that she was banned. Had Plaintiff communicated this belief to Campbell, Campbell would have had the opportunity to correct Plaintiff's apparent misunderstanding. Campbell Depo. pg. 187-189, lns. 14-2, attached hereto as **Exhibit 11**; **Exhibit 15**.

But even assuming that Plaintiff was banned from visiting Waverly (which was not her assigned work location), such a ban did not rise to the level of an adverse

employment action. Adverse employment actions are things that affect the employment relationship, not an employee's choice of where to socialize. *See Ray v. Int'l Paper Co.*, 909 F.3d 661 (4th Circuit 2018). Indeed, Pratt has every right to manage its workforce, and micro-manage if necessary.  An employee has no cause of action simply because the supervisor or employer is demanding, picky, or even annoying about how work is completed.   Managing Plaintiff's job duties does not rise to the level of a "direct or indirect impact on [Plaintiff's] employment, but rather show inconveniences that are immaterial to her employment" *See Ray v. Int'l Paper Co.*, 909 F.3d 661 (4th Circuit 2018).; *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422 (4th Circuit 2015). See also *Boone v. Goldin*, 178 F.3d 253, 255 (4th Circuit 1999). (An adverse employment action occurs where an employee is discharged, demoted, receives a decrease in benefits or pay, loss of job title, or supervisory responsibilities, or has reduced chances for promotion). As the Court stated in Thorn v. Sebelius, 766 F. Supp. 2d 585, 599 (Dist. Md. 2011), "not everything that makes an employee unhappy is actionable adverse action." Citing *Settle v. Baltimore Cnty.*, 34 F. Supp 2d 969, 989 (Dist. Md. 1999). Being held accountable for staff whereabouts during scheduled work time is, at minimum, required and expected work place norms.  What it is not, is adverse employment action.

### 2)  The Issuance of a PIP is Not An Adverse Action

Plaintiff claims that the issuance of a Performance Improvement Plan ("PIP") was an adverse action taken by Pratt in retaliation for her alleged protected activities. *Am. Compl.* (ECF No. 5) ¶ 27. Plaintiff is incorrect. On November 27, 2019, Pratt issued Plaintiff a PIP because of her poor performance regarding interpersonal relationships, effective communication, and external and internal customer service. Moran Depo. Vol

II, pgs. 183-186, lns. 10-16, attached hereto as **Exhibit 3**; **Exhibit 12**. The PIP is not a

disciplinary action, but a method used to help improve employee performance. See

*Jensen-Graf v. Chesapeake Employer's Ins. Co.*, 616 Fed.Appx. 596, 598 (4th Cir.

2015)(employer did not take adverse employment action against employee when it

placed her on performance improvement plan); *James v. Booz-Allen & Hamilton, Inc.*,

368 F.3d 371, 376-377 (4th Cir. 2004)(. Moran Depo. Vol II, pgs. 183-186, lns. 10-16,

attached hereto as **Exhibit 3**; **Exhibit 12**. Plaintiff never received lower pay, was

demoted, was passed over for a promotion, or was given significantly different

responsibilities because of the PIP. Harvey Depo. pgs. 78-81, lns. 18-6, attached hereto

as **Exhibit 5**; Moran Depo. Vol II, pgs. 183-186, lns. 10-16, attached hereto as **Exhibit**

**3**; **Exhibit 12**. Plaintiff's PIP is not an action that could reasonably be considered an

adverse employment action. See *Jensen-Graf v. Chesapeake Employer's Ins. Co.*, 616

Fed.Appx. 596, 598 (4th Cir. 2015)(employer did not take adverse employment action

against employee when it placed her on performance improvement plan); *James v. Booz-*

*Allen & Hamilton, Inc.*, 368 F.3d 371, 376-377 (4th Cir. 2004).

### 3)  *Branch Transfer*

Plaintiff also claimed that an adverse action was taken against her when she was

transferred from the Waverly Branch to the Clifton Branch. *Am. Compl.* (ECF No. 5).

She claims that management retaliated against her when, on December 3, 2019, her

office was "immediately transferred to Defendant's Lake Clifton Branch, a smaller

branch than Waverly, where Plaintiff will be less likely to further develop, acquired, and

apply, Plaintiff's librarian skills and expertise." *Am. Compl.* (ECF No. 5, ¶24).

Pratt's transfer policy states "shifts of personnel from one position or one location to another within the same grade or same classification of duties-are made when necessary to meet the needs of the Library as well as for the development and welfare of the staff." **Exhibit 6**. The transfer policy applies to all employees of Pratt. **Exhibit 6**. Pratt transfers employees as its structure changes, often moving management level employees and non-management level employees. Harvey Depo. pg. 31, lns. 16-18, attached hereto as **Exhibit 5**; Moran Depo. pg. 96, lns. 10-15, attached hereto as **Exhibit 3**; Herb Malveaux Affidavit, attached hereto as **Exhibit 16**.

Pratt did indeed transfer Plaintiff from the Waverly Branch to the Lake Clifton Branch.  Moran Depo. Vol II, pg. 188, lns. 1-20, attached hereto as **Exhibit 3**. The Lake Clifton Branch, the Waverly Branch, and all other branches under Pratt are located in the City of Baltimore. See Moran Aff. Attachment 1, attached hereto as **Exhibit 4**. Just as any other Pratt employee, Plaintiff was, and still is, subject to Pratt's transfer policy. **Exhibit 6**. Further, Plaintiff is no stranger to Pratt's transfer policy. Based on Plaintiff's deposition testimony, Plaintiff has worked at almost every branch location within the library system during her time with the library system. Harvey Depo. pg. 31, lns. 16-18, attached hereto as **Exhibit 5**. For example, in 2001 Pratt transferred Plaintiff to the Cherry Hill Branch. Harvey Depo. pg. 31,16-17 attached hereto as **Exhibit 5**. Pratt also transferred Plaintiff to various branches in 2002, 2013, and 2015. Harvey Depo. pg. 31, lns. 16-18 attached hereto as **Exhibit 5**. All of these transfers occurred before any of Plaintiff's alleged protected activities. Harvey Depo. pg. 31, lns. 16-18 attached hereto as **Exhibit 5**; Am. Compl. (ECF No. 5). Any assumption on her part that she is exempt

20

from certain library policies simply because she engaged in "protected activity" is misplaced.

In deciding to transfer Plaintiff to the Lake Clifton Branch, management considered not only the needs of Pratt, but also what would be a good fit for Plaintiff. Moran Depo. Vol II pg. 188, lns. 1-20, attached hereto as **Exhibit 3**; Harvey Depo pgs. 23-24, lns. 8-3, attached hereto as **Exhibit 5**. Management saw Lake Clifton as a good place for Plaintiff to transfer to, in part, due to her skills with community outreach. Moran Depo. Vol II pg. 188, lns. 1-20, attached hereto as **Exhibit 3**; Harvey Depo pgs. 23-24, lns. 8-3, attached hereto as **Exhibit 5**. Additionally, Pratt planned a renovation project for Lake Clifton. Plaintiff had experience in handling a renovation in her role as a manager. Moran Depo. Vol II pg. 188, lns. 1-20, attached hereto as **Exhibit 3**; Harvey Depo pgs. 23-24, lns. 8-3 attached hereto as **Exhibit 5**. In 2013, Plaintiff was the manager of Waverly when Waverly underwent a renovation. Moran Depo. Vol II pg. 188, lns. 1-20, attached hereto as **Exhibit 3**; Harvey Depo pgs. 23-24, lns. 8-3 attached hereto as **Exhibit 5**. While she was transferred to Northwood during the construction, Plaintiff returned to Waverly and reopened the branch. Management viewed Plaintiff's transfer to Lake Clifton as an opportunity for Plaintiff to succeed in her management role while addressing the needs of yet another branch, the Clifton branch's pending renovation. Moran Depo. Vol II pg. 188, lns. 1-20, attached hereto as **Exhibit 3**; Harvey Depo pgs. 23-24, lns. 8-3 attached hereto as **Exhibit 5**.

Plaintiff suffered no negative impacts on her employment as a result of any of her transfers. Moran Depo. Vol II pg. 188, lns. 1-20, attached hereto as **Exhibit 3**; Harvey Depo pgs. 23-24, lns. 8-3 attached hereto as **Exhibit 5**. Plaintiff has maintained her core

duties, rank, classification, annual vacation days, annual personal leave, and medical benefits. Harvey Depo. pgs. 78-81, lns. 18-6, attached hereto as **Exhibit 5**. Plaintiff has never been excluded from applying to a different role, even if she failed to ever actually apply. Harvey Depo. pgs. 78-81, lns. 18-6, attached hereto as **Exhibit 5**. In fact, Plaintiff has not only maintained her salary, but has had annual increases in her salary. Harvey Depo. pgs. 78-81, lns. 18-6, attached hereto as **Exhibit 5**.

Pratt did transfer Plaintiff to the Clifton Branch, just as Pratt has transferred Plaintiff, and all of its employees, on many occasions. None of Plaintiff's transfers, including the transfer to Lake Clifton had a negative impact on Plaintiff or violated any applicable policy or law. But more to the point, even though Plaintiff was involuntarily moved, that alone is not an adverse employment action. *See Norloff v. VA*, 51 F. Supp. 2d 669, 702 (E.D. VA 1998) (An employee that is reassigned to another work location within the same geographic area, such relocation does not constitute an adverse employment action). See *Holland v. Washington Homes Inc*, 487 F.3d 208, 219 (4th Circuit 2007) (Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position). See also *Boone* 178 F.3d at 255 (4th Circuit 1999); *Peary v. Goss*, 365 F. Supp. 2d 713, 723-26 (E.D. VA. 2018).

4) *Management Did Not Pressure Plaintiff To Resign*

Plaintiff also alleged that Robin Moran asked her to resign on or about November 25, 2019. *Am. Compl.* ¶ 23. Other than her own self-serving statement, there is nothing to support her claim that she was asked to resign. In fact, Robin Moran herself is clear

that she never asked Plaintiff to resign. Moran Depo. Vol II, pg. 185, lns. 17-22, attached hereto as **Exhibit 3**. But even if true, such a request does not rise to the level of an adverse employment action.   *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d at 431. ("The requirement of an adverse employment action seeks to differentiate those harms that work a significant detriment on employees from those that are relatively insubstantial or trivial.") Plaintiff has maintained her employment continuously from her date of hire in March of 1997 until the writing of this motion. Moran Affidavit, attached hereto as **Exhibit 4**. Even in her complaint, Plaintiff makes clear that she did not resign. *Am. Compl.* ¶ 23.

There is no evidence to support Plaintiff's allegation that she was pressured to resign. Further, assuming for the sake of argument that Plaintiff was pressured to resign, there is no evidence to support that Plaintiff suffered any harm, whatsoever, as a result of the alleged pressure to resign.

### C.   Plaintiff Cannot Establish A Causal Connection Between Her Alleged Protected Activity and Her Alleged Adverse Actions by Pratt

The final element of Plaintiff's retaliation claim is a required showing of a causal connection, or nexus, between the protected activity and the adverse action.  Assuming, for the sake of argument, that Plaintiff both alleged a protected activity and alleged an adverse employment action, Plaintiff's claim must not survive summary judgment because she does not have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Plaintiff has failed to demonstrate this prong of her claim.

1.  *The 2017 EEOC Filing Is Not Causally Connected To Plaintiff's Alleged Adverse Actions*

Even if the EEOC's filing on the behalf of five claimants including Plaintiff's for an Equal Pay Act claim constitutes protected by Plaintiff for her retaliation claim in this matter, it strains plausibility that a nexus or even temporal proximity of a 2017 EEOC EPA claim to Plaintiff's alleged adverse action exists. The only possible evidence Plaintiff may offer to support their claim of a causal connection is temporal proximity. Courts have found that the passage of time, even as little as three to four months, is too long to establish temporal proximity alone. *Pascual v. Lowe's Home Centers, Inc.*, 193 Fed.Appx. 229, 233-234 (4th Cir. 2006). A ten-week temporal proximity, by itself, has also been found to be insufficient to support a retaliation claim. *Perry v. Kappos*, 489 Fed.Appx. 637, 643-644 (4th Cir. 2012).

Plaintiff filed her previous charge of discrimination on August 10, 2016 and her resulting lawsuit was filed by the EEOC on September 17, 2017. Plaintiff's first instance of alleged adverse action did not occur until October of 2019, twenty-four (24) months after the alleged protected activity. Plaintiff cannot show that her alleged protected activity of her filing of a previous charge of discrimination in 2016 and the resulting 2017 lawsuit is causally connected to her alleged adverse actions. *Pascual v. Lowe's Home Centers, Inc.*, 193 Fed.Appx. 229 (4th Cir. 2006); *Perry v. Kappos*, 489 Fed.Appx. 637 (4th Cir. 2012).

2.  *There Is No Evidence of a Causal Connection Between Plaintiff's Complaint of Alleged Interference By Officer Little-Staten And Her Alleged Adverse Actions*

Assuming, for the sake of argument, that Plaintiff's complaint about Officer Little-Staten constituted an adverse action, there is no causal connection to Plaintiff's alleged adverse employment actions. As demonstrated above, Pratt had legitimate business reasons for its actions. Plaintiff cannot rationally establish that the EPA litigation or the alleged report of sexual harassment were causally connected to her alleged adverse employment actions.

## **CONCLUSION**

For the reasons stated, Defendant respectfully requests that this Honorable Court grant the Motion for Summary Judgment, in its entirety, with prejudice.

Respectfully submitted,

JAMES L. SHEA, City Solicitor


_____/s/_____
Cheryl Simpson Parker
Federal Bar No.: 26377
Chief Solicitor
Baltimore City Department of Law
100 N. Holliday Street
City Hall, Suite 101
Baltimore, Maryland 21202
(410) 361-9139 (Phone)
(410) 576-7203 (Facsimile)
(mobile) 443-983-4407


_____/s/_____
Gary Gilkey
Federal Bar No.: 26213
Division Chief
Baltimore City Department of Law
100 N. Holliday Street
City Hall, Suite 101
Baltimore, Maryland 21202
(410) 396-3960 (Phone)
(410) 576-7203 (Facsimile)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ANN MARIE HARVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 20-cv-00874-RDB |
| | ) | |
| ENOCH PRATT FREE LIBRARY, | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

**APPENDIX TO  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | 2019 EEOC Charge |
| 2 | Right to Sue Letter |
| 3 | Robin Moran Deposition Transcript |
| 4 | Robin Moran Affidavit |
| 5 | Harvey Deposition Transcript |
| 6 | Transfer Policy |
| 7 | PLNTF 0051-0054 |
| 8 | Officer Little-Staten Deposition Transcript |
| 9 | Def. Answer to Interrogatory Attachment No. 3.0-3.2 |
| 10 | PLNTF 0055 |

| 11 | Zandra Campbell Testimony |
| 12 | Personal Improvement Plan (PIP) |
| 13 | Letter of Expectations |
| 14 | Zandra Campbell Affidavit |
| 15 | PLNTF 0080 |
| 16 | Herb Malveaux Affidavit |