## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANN MARIE HARVEY,         *

    Plaintiff,            *

      v.                *       Civil Action No. RDB-20-0874

ENOCH PRATT FREE LIBRARY,  *
*et al.*,
                         *

    Defendants.         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Ann Marie Harvey ("Ms. Harvey" or "Plaintiff") brings this action against Defendants Enoch Pratt Free Library ("the Library") and the Mayor and City Council of Baltimore ("the City"), alleging a single count of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.  (Am. Compl., ECF No.  5.)  Currently pending is Defendants' Motion for Summary Judgment. (ECF No. 18.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, Defendants' Motion for Summary Judgment (ECF No. 18) is GRANTED, and summary judgment shall be ENTERED in favor of Defendants on the sole count of the Plaintiff's Amended Complaint (ECF No. 5).

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir.

2013).  On or about March 10, 1997, Plaintiff Ms. Harvey began working as a Young Adult Librarian for the Pennsylvania Avenue branch of the Defendant Enoch Pratt Free Library ("the Library").  (Harvey Dep. at 16, ECF No. 24-2.)  In 1999, Plaintiff was promoted to a Librarian II position and Assistant Branch Manager at the Pennsylvania Avenue branch.  (*Id.* at 16-17.)  Ms. Harvey was again promoted in 2001 to the position of Branch Manager for the Cherry Hill branch.  (*Id.*)  In 2002, Ms. Harvey became a Librarian Supervisor I and Branch Manager of the Waverly branch.  (*Id.* at 17.)

In December 2019, Ms. Harvey was transferred to the Clifton branch as the Branch Manager, where she continues to be employed.  (*Id.*)  As a Librarian Supervisor I, Ms. Harvey is responsible for the daily operations of the branch she manages including supervising staff and volunteers, timekeeping, attendance monitoring, and community outreach.  (Harvey Dep. at 20-21, ECF No. 18-6.)  Ms. Harvey testified that, during her employment with the Library, she has worked in "[m]ore than likely all of" the 21 neighborhood branches.  (*Id.* at 31.)  It is undisputed that Plaintiff has performed her job satisfactorily and has never failed a performance evaluation.  (Anderson Dep. at 89, ECF No. 24-4.)  It is also undisputed that she has maintained her supervisory responsibilities throughout her employment, has received annual salary increases, has not had a decrease in rank, classification, salary, vacation days, personal leave or medical benefits, has not been excluded from applying to a different role, and has not been suspended without pay.  (Harvey Dep. at 78-81, ECF No. 18-6.)

## I.    Structure of the Neighborhood Library Services Division

Defendant Enoch Pratt Free Library is a public library system organized under the Defendant Mayor and City Council of Baltimore.  (Am. Compl. ¶¶ 3-4.)  Heidi Daniel is the

Chief Executive Officer of the Library. (Moran Dep. at 72, ECF No. 24-6.) The Library is divided into two business organizations: Public Service and Operations. (*See* Moran Dep. at 203, ECF No. 18-4.) The Public Services organization is further comprised of several divisions, including the Neighborhood Library Services division ("NLS division"). (*Id.*) The NLS encompasses 21 neighborhood library branches and a mobile services unit. (*Id.* at 203-205; *see also* 2017-2019 NLS Organization Charts, ECF No. 24-3.)

The neighborhood library branches are operated with the following chain of command: a Chief, an Assistant Chief, Group Supervisors, and Branch Managers. (*Id.*) A Librarian Supervisor I serves as a branch manager in each neighborhood branch and reports to a Group Supervisor who in turn reports to the Assistant Chief. (*Id.*) From 2017 to 2018, Eunice Anderson served as NLS's Chief, and in 2019, upon Ms. Anderson's retirement, that position was filled by the Assistant Chief Herbert Malveaux. (Anderson Dep. at 11-15, ECF No. 24-4; Malveaux Dep. at 6-10, ECF No. 24-5.) As Chief, Anderson and then Malveaux were responsible for the daily operations of the 21 neighborhood branches including staff evaluations, transfers, staffing, and payroll. (*Id.*)

In 2017, Robin Moran was hired as the Library's Director of Human Resources ("HR"). (Moran Dep. at 16, ECF No. 24-6.) In 2018, Zandra Campbell became a Group Supervisor of several branches including the Waverly branch where Plaintiff Ms. Harvey was the Branch Manager. (*Id.*) A Group Supervisor is tasked with employee relations issues, including working with Human Resources to resolve issues that are not resolved on the division level. (*Id.* at 22-24.) The Library's HR department's policies and procedures are applicable to all of its divisions. (Moran Dep. at 203, ECF No. 18-4.) According to the

Library's HR policy: "Transfers - shifts of personnel from one position or one location to another within the same grade or same classification of duties – are made when necessary to meet the needs of the Library as well as for the development and welfare of the staff.  Transfers may be initiated by administrative and/or supervisory staff."  (Transfer Policy, ECF No. 18-7.)  In addition, "[t]he authority to transfer resides with the department manager or division chief," who must "first inform the Human Resources Office before a transfer of staff is made."  (*Id.*)  Employees who are transferred "should have at least two weeks' notice" and "[a]n explanation for the transfer should be given to all staff members who are impacted…including specific reasons to the degree possible and any other pertinent information in support of this personnel action."  (*Id.*)

## II.    Ms. Harvey's 2016 EEOC Charge of Gender Discrimination

On or about August 16, 2016, Plaintiff Ms. Harvey filed a charge of gender discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), which became the basis of a lawsuit filed in 2017 by the EEOC on behalf of Harvey and four other female library branch managers against Defendants the Library and the City ("the 2017 lawsuit").  (Harvey Dep. at 35-36, ECF No. 18-6.); *see also EEOC v. Enoch Pratt Free Library*, *et al.*, Case No. PX-17-2860 (D. Md. Sept. 27, 2017).  That case proceeded to a bench trial and, on December 23, 2020, Judge Xinis entered judgment against Defendants, finding that the Library had violated the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d)(1), by paying a male librarian more than the five female claimants, including Ms. Harvey, for performing the same work.  *EEOC v. Enoch Pratt Free Library*, *et al.*, Case No. PX-17-2860, Final Judgment, ECF No. 99 (D. Md. Dec. 23, 2020).

Ms. Harvey alleges that, from 2017 to the present, Defendants have retaliated against her for her participation in the 2017 lawsuit.  As HR Director, Ms. Moran was aware of and involved in the 2017 lawsuit by gathering information, attending depositions, receiving updates on the case status, and discussing the case with CEO Heidi Daniel.  (Moran Dep. at 65-67, ECF No. 24-6.)  Ms. Anderson, then the Chief of the NLS division, was also aware of the lawsuit and attended meetings with the Library's administration regarding the case.  (Anderson Dep. at 45-46, 101-102, ECF No. 24-4.)

### III.    Ms. Harvey's Employment Experience from 2017 to 2019

According to Ms. Harvey, on or about October 25, 2017, Ms. Daniel and Ms. Anderson held a meeting with branch managers and group supervisors where several managers complained about staffing and scheduling issues within their branches.  (Harvey Dep. at 41-48, ECF No. 24-2.)  After the meeting, Ms. Anderson sent an email to branch managers, stating: "I was surprised and embarrassed by the behavior exhibited; the hostility, mistrust, and unprofessional-ism did not show your good side.  Specifically, …the announcement of the new hours and the discussion that ensued was completely unacceptable."  (11/2/2017 Anderson Email, ECF No. 24-8.)  Ms. Anderson also spoke to Ms. Harvey following the meeting about Ms. Harvey's alleged "insubordination with asking question[s] of the CEO," specifically the harsh "tone" of Ms. Harvey's questions.  (Harvey Dep. at 43, ECF No. 24-2; Anderson Dep. at 85-88, ECF No. 24-4.)  In or around July 2018, Ms. Anderson issued Ms. Harvey a memo documenting the conversation she had with Ms. Harvey after the 2017 meeting. (Anderson Dep. at 78-83, ECF No. 24-4.)

On September 19, 2019, Ms. Harvey emailed her Group Supervisor, Ms. Campbell, and NLS's Chief, Mr. Malveaux, providing information about Ms. Harvey's interactions with Nicole Nicholson, a new custodial staff member at the Waverly branch.  (9/19/2019 Email Exchange, ECF No. 24-9.)  Ms. Harvey reported that Ms. Nicholson was insubordinate and confrontational towards her.   (*Id.*) The same day, Mr. Malveaux responded that "Ms. Nicholson will likely not be returning to Waverly."  (*Id.*)  On September 20, 2019, Ms. Nicholson submitted a letter "To Whom it May Concern," logging a complaint against Ms. Harvey. (9/20/2019 Nicholson Letter, ECF No. 24-10.)

On September 28, 2019, Ms. Harvey witnessed a minor female staff member talking with Officer Lolita Little-Staten, the security officer at the Waverly branch.  (Harvey Dep. at 39-40, 51-53, ECF No. 18-6; 9/29/2019 Harvey Email re Inappropriate Behavior, ECF No. 24-12.)  Ms. Harvey learned that the minor staff member was discussing an incident where an older male custodian allegedly made inappropriate advances and comments towards the minor. (*Id.*)  Ms. Harvey asked Ms. Little-Staten "not to become involved in the personnel matters of the branch."  (Harvey Dep. at 51, ECF No. 18-6.)  However, Ms. Little-Staten later brought the alleged wrongdoer into Ms. Harvey's office to discuss the incident.  (*Id.* at 52.)  Ms. Harvey refused to discuss the incident at that time when the minor staff member was still in the building.  (*Id.*)  Ms. Harvey "basically told [Ms. Little-Staten] to get out of [her] office and tried to get Neighborhood Services and security to come and address this situation with Officer Little-Staten."  (*Id.*)  Ultimately, after speaking with the minor staff member, Ms. Harvey reported the incident to her supervisors, Ms. Campbell and Mr. Malveaux.  (9/29/2019 Harvey Email re Inappropriate Behavior, ECF No. 24-12.)  Ms. Harvey also reported to Ms.

Campbell and Mr. Malveaux that Ms. Little-Staten had been insubordinate when Ms. Harvey asked her to leave her office and not to interfere with personnel matters. (9/30/2019 Harvey Email, ECF No. 24-13.)

### IV.   Ms. Harvey's Meetings with Ms. Campbell, Ms. Moran, and Mr. Malveaux

On October 3, 2019, Ms. Campbell emailed Ms. Harvey, requesting a meeting with her, Ms. Moran, and Mr. Malveaux "to discuss the recent concerns" at the Waverly branch. (10/3/2019 Campbell Email, ECF No. 24-15.)   On October 7, 2019, Ms. Harvey met with Ms. Campbell, Ms. Moran, and Mr. Malveaux.   (Harvey Dep. at 40, ECF No. 18-6; Moran Dep. at 168-170, ECF No. 24-6; 10/16/2019 Harvey Email to Heidi Daniel re Meeting with HR and NLS, ECF No. 24-16.)   At the meeting, Ms. Harvey "was told of staff complaints, customer complaints, and accusations from current and former staff at the Waverly Branch Library."   (10/16/2019 Harvey Email to Heidi Daniel re Meeting with HR and NLS, ECF No. 24-16.)   At the end of the meeting, Ms. Harvey was told "not to go back to the [Waverly] branch and to take some time and to figure things out."   (*Id.*)   In an October 16, 2019 email to CEO Ms. Daniel, Ms. Harvey reported feeling "ambushed" and "bullied during this entire meeting," that she had sought help from the Employee Assistance Program ("EAP"), and that she was in the process of completing Family and Medical Leave Act ("FMLA") paperwork as a "necessary step in order to care for [her] wellbeing."   (*Id.*)

On or about November 25, 2019, Ms. Harvey again met with Ms. Campbell, Ms. Moran, and Mr. Malveaux.   (Moran Dep. at 183-188, ECF No. 24-6.)   At the meeting, Ms. Harvey was told that she would be transferred to the Clifton branch because the Clifton staff members were more "tenured" and "Clifton is a branch where it needs a strong manager who

has good community skills." (*Id.*)  Ms. Campbell and Mr. Malveaux explained to Ms. Harvey that Clifton was about to undergo renovation and that it was a branch that needed "someone who feels comfortable with outreach." (*Id.*)  In addition, they determined that Ms. Harvey should not be transferred to a branch with former Waverly employees "because they did not want to work under her any longer" and they did not want to "set [Ms. Harvey] up for failure." (*Id.*)

Ms. Harvey was also presented at the November meeting with a Letter of Expectations and a Performance Improvement Plan ("PIP"). (*Id.*; Harvey's 11/25/2019 Meeting Notes, ECF No. 24-17; PIP, ECF No. 18-13; Letter of Expectations, ECF No. 18-14.)  A PIP is a tool used by the Library's management to improve an employee's performance, outlining key factors upon which the employee needs to improve. (Moran Dep. at 199, ECF No. 18-4.)  According to Ms. Moran, the PIP is not a disciplinary action. (*Id.*)  Ms. Harvey's PIP and Letter of Expectations provided that Ms. Harvey needed to work on interpersonal relationships, effective communication, and external and internal customer service. (PIP, ECF No. 18-13; Letter of Expectations, ECF No. 18-14.)  The PIP provided certain deadlines for Plaintiff's completion, which deadlines she ultimately successfully met. (PIP, ECF No. 18-13.)  According to Ms. Harvey, Ms. Moran also told Ms. Harvey to resign during this meeting, but Ms. Harvey refused. (Harvey's 11/25/2019 Meeting Notes, ECF No. 24-17.)  According to Ms. Moran, however, Ms. Harvey was never told that she had to resign. (Moran Dep. at 185:21-22, ECF No. 24-6.)

On or about December 16, 2019, after Ms. Harvey had returned to work as Branch Manager of the Clifton branch, Ms. Campbell and Mr. Malveaux planned to meet with Ms.

Harvey at the Clifton branch. (12/16/2019 Campbell Email, ECF No. 24-18; Campbell Dep. at 187-189, ECF No. 18-12; *see also* Am. Compl. ¶ 24, ECF No. 5.)  When Ms. Campbell and Mr. Malveaux were on the way to the Clifton branch for this meeting, they learned that Ms. Harvey was attending a line dancing event at the Waverly branch.  (Campbell Dep. at 187-189, ECF No. 18-12.)  They rerouted to the Waverly branch, where they spoke with Ms. Harvey and "expressed to her that the staff were concerned about her just popping up at the building." (*Id.*) They directed Ms. Harvey to request approval in writing in the future before going to the Waverly branch.  (*Id.*)  Ms. Harvey received an email from Ms. Campbell memorializing these events and confirming that Ms. Harvey would "not to come to [the Waverly branch] without a written request via email and [Ms. Campbell's] confirmed presence when that request is approved."  (12/16/2019 Campbell Email, ECF No. 24-18.)

On December 17, 2019, Plaintiff Ms. Harvey filed a charge of discrimination with the EEOC, alleging that she had been discriminated against based on race, national origin, retaliation, and age.  (EEOC Charge, ECF No. 18-2.)  On December 30, 2019, the EEOC dismissed Ms. Harvey's Charge and issued her a Right to Sue Letter.  (Right to Sue Letter, ECF No. 18-3.)  Ms. Harvey then filed this suit against Defendants on April 1, 2020, alleging four counts of discrimination based on race, national origin, retaliation, and age.  (ECF No. 1.)  On July 9, 2020, Plaintiff filed an Amended Complaint, asserting a single count for retaliation under Title VII and Section 1981.  (Am. Compl., ECF No. 5.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).   As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

Plaintiff Ms. Harvey alleges a single count of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and under 42 U.S.C. § 1981.   Title VII generally prohibits an employer from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2.   When a plaintiff asserts a claim for discrimination under Title VII, that plaintiff may avert summary judgment and establish a claim of intentional discrimination using "ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue."   *EEOC v. Western Elec. Co., Inc.*, 713 F.2d 1011, 1014 (4th Cir. 1983).   Alternatively, a plaintiff may proceed under the proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny, under which the employee, after establishing a *prima facie* case of discrimination, must demonstrate that the employer's proffered nondiscriminatory reason for the challenged employment action is in fact a pretext for discrimination.   *Id.*

In the sole count of Ms. Harvey's Amended Complaint, she alleges retaliation under both Title VII and 42 U.S.C. § 1981.   The same framework governs Title VII and § 1981 claims, so this Court will analyze Ms. Harvey's claims together under the single count that she

asserts.  *See Perkins v. Kaiser Found. Health Plan of Mid-Atl. States*, Civil Action No. DKC-08-3340, 2010 WL 889673, at 3 (D. Md. Mar. 5, 2010) (analyzing Title VII and § 1981 claims together) (citing *Lightner v. City of Wilmington*, 545 F.3d 260, 263 (4th Cir. 2008)).

Title VII provides that an employer may not discriminate against an employee who "has opposed any . . . unlawful employment practice" covered by the statute. 42 U.S.C. § 2000e-3(a).  To state a *prima facie* claim of retaliation under Title VII, a plaintiff must prove that (1) she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the activity and the adverse action. *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997); *McGrath-Malott v. Maryland*, 565 F. Supp. 2d 656, 670 (D. Md. 2008).

When, as in this case, the plaintiff relies upon circumstantial evidence of misconduct, then the burden-shifting framework of *McDonnell Douglas* applies.  *McGrath-Malott*, 565 F. Supp. 2d at 670.  After the employee establishes a *prima facie* case, the burden shifts to the employer to rebut the inference of retaliation.  *McDonnell Douglas*, 411 U.S. at 802.  Although the employer's burden is not onerous, it must articulate "some legitimate, nondiscriminatory reason" for the adverse employment action.  *Id.*  Once the employer produces a legitimate, nondiscriminatory reason, the burden returns to the plaintiff to prove that the defendant's stated reason is pretextual.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  To that end, the employee must either show that the employer's explanation is "'unworthy of credence' or . . . offer[ ] other forms of circumstantial evidence sufficiently probative of" the retaliation.  *Mereish v. Walker*, 359 F.3d 330, 332 (4th Cir. 2004); *see also McGrath-Malott*, 565 F. Supp. 2d at 670-71.

## I.    Protected Activity

A protected activity may fall into two categories, opposition and participation. 42 U.S.C. § 2000e-3(a). The participation clause protects an employee from retaliation where he "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII. *Id.*  As for the opposition clause, the Fourth Circuit has held that "protected oppositional activities may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complaints ... about suspected violations.'" *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (quoting *Bryant v. Aiken Reg'l Med. Ctrs.*, 333 F.3d 536, 543-55 (4th Cir. 2003)).  Plaintiff asserts that she engaged in the following protected activities: (1) filing an EEOC complaint in 2016, which ultimately resulted in litigation brought by the EEOC against Defendants; and (2) reporting Officer Little-Staten's interference in a sexual harassment investigation.

Defendants argue that none of these actions constitute protected activity as contemplated by the Title VII.  Title VII protects an employee when she opposes "not only . . . employment actions actually unlawful . . . but also employment actions [she] reasonably believes to be unlawful." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015). This opposition encompasses "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 259 (4th Cir.1998). The Fourth Circuit noted that while individual acts may be scrutinized to determine "their nature, purpose, and nexus to the alleged objective," the plaintiff's conduct must be

examined "*as a whole.*" *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015). This inquiry first looks to whether the employee "communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination." *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.,* 555 U.S. 271, 276 (2009). If this first question is answered in the affirmative, then a court considers whether this communicated belief concerns a practice that is "actually unlawful under Title VII" or that the employee "reasonably believes to be unlawful." *Boyer–Liberto v. Fontaineblesu Corp.,* 786 F.3d 264, 282 (4th Cir.2015).

Defendants argue that Plaintiff's 2016 EEOC complaint cannot constitute protected activity in this case because too much time passed between her filing of the complaint and the alleged adverse employment actions. Defendants' argument, however, is not that Plaintiff did not engage in protected activity, but that her protected activity is not causally connected to the alleged adverse employment action. This argument goes to the *third* element of a *prima facie* retaliation claim and will be addressed below. Accordingly, construing all reasonable inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff engaged in protected activity by filing an EEOC Complaint and participating in a lawsuit brought by the EEOC against Defendants on her behalf that has been ongoing from 2017 to the present. *See EEOC v. Enoch Pratt Free Library*, *et al.*, Case No. PX-17-2860 (D. Md. Sept. 27, 2017). As a result, this Court need not address Plaintiff's alternative alleged protected activity of reporting Officer Little-Staten's interference in a sexual harassment investigation.

## II.    Adverse Employment Action

Even if Ms. Harvey engaged in a protected activity, she has failed to generate a genuine dispute of fact as to the existence of an adverse employment action. A plaintiff "can

demonstrate that an employer 'acted adversely' by showing that 'a reasonable employee would have found the challenged action materially adverse….'" *Lewis v. Baltimore City Bd. of Sch. Commissioners*, 187 F. Supp. 3d 588, 595 (D. Md. 2016) (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Ms. Harvey asserts that she experienced the following adverse employment actions by Defendants:  (1) conducting a "sham" investigation of Plaintiff; (2) issuing Plaintiff a written reprimand in 2018; (3) forcing Plaintiff to take FMLA leave; (4) transferring Plaintiff to a different library branch; (5) banning Plaintiff from accessing the Waverly library branch; and (6) asking Plaintiff to resign.   However, none of these actions constitute an adverse employment action as contemplated by Title VII.  An adverse employment action is one that "adversely affects the terms, conditions, or benefits of the plaintiff's employment."  The "typical requirements" for establishing an adverse employment action are allegations of "discharge, demotion, decrease in pay or benefits loss of job title or supervisory responsibility, or reduced opportunities for promotion." *McNeil v. Loyola University*, Civil No. WDQ-13-1473, 2014 WL 320494, at *6 (D. Md. Jan. 27, 2014) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)).

None of the conduct alleged by Ms. Harvey constitutes an adverse employment action.  First, there is no dispute that Defendants initiated an investigation into Ms. Harvey's claim that the new custodian, Ms. Nicholson, was insubordinate.  (*See* 9/19/2019 Email Exchange, ECF No. 24-9.)  While Ms. Harvey asserts that this investigation instead led Defendants to investigate Ms. Harvey and not Ms. Nicholson, there is nothing in the record to support this speculation.  "[I]f a disciplinary investigation is reasonably rooted in articulable facts justifying

such an investigation, neither inconvenience nor emotional anxiety on the employee's part will constitute an 'employment injury' sufficient to render the investigation itself an adverse employment action independently cognizable under Title VII." *Settle v. Baltimore County*, 34 F. Supp. 2d 969, 992 (D. Md. 1999).  Plaintiff generates no dispute of fact as to whether the investigation was reasonably rooted in articulable facts, especially given that Plaintiff concedes the investigation was initiated at her own request.  Moreover, as a result of Plaintiff's complaint of Ms. Nicholson's behavior, Mr. Malveaux informed Plaintiff that "Ms. Nicholson will likely not be returning to Waverly."  (*See* 9/19/2019 Email Exchange, ECF No. 24-9.)

Second, Defendants' issuance of a written reprimand in 2018 was also not an adverse employment action.  There is no dispute that, in or around July of 2018, Ms. Anderson issued Ms. Harvey a memo documenting a conversation she had with Ms. Harvey after the 2017 CEO meeting in which Ms. Harvey was allegedly insubordinate and used a "harsh" tone in asking questions of the new CEO.  (Harvey Dep. at 43, ECF No. 24-2; Anderson Dep. at 78-83, 85-88, ECF No. 24-4.)  However, the issuance of this memo does not constitute an adverse employment action because Ms. Harvey's employment conditions did not change.  As the Fourth Circuit has explained, "a poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (quoting *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000)). There is simply nothing in the record in this case that suggests Ms. Harvey's employment conditions were in any way affected by the 2018 written reprimand.

Third, the record shows that Plaintiff was not "forced" to take FMLA leave as she suggests.  There is no dispute that, on October 7, 2019, Ms. Harvey met with Ms. Campbell, Ms. Moran, and Mr. Malveaux.  (Harvey Dep. at 40, ECF No. 18-6; Moran Dep. at 168-170, ECF No. 24-6; 10/16/2019 Harvey Email to Heidi Daniel re Meeting with HR and NLS, ECF No. 24-16.)  At the meeting, Ms. Harvey "was told of staff complaints, customer complaints, and accusations from current and former staff at the Waverly Branch Library."  (10/16/2019 Harvey Email to Heidi Daniel re Meeting with HR and NLS, ECF No. 24-16.)  At the end of the meeting, Ms. Harvey was told "to take some time and to figure things out."  (*Id.*)  In an October 16, 2019 email to CEO Ms. Daniel, Ms. Harvey reported feeling "ambushed" and "bullied during this entire meeting," that she had sought help from the Employee Assistance Program ("EAP"), and that she was in the process of completing Family and Medical Leave Act ("FMLA") paperwork as a "necessary step in order to care for [her] wellbeing."  (*Id.*)

Although nowhere in Plaintiff's Amended Complaint does she allege that Defendants forced her to take FMLA leave, Plaintiff now asserts in her Opposition to Defendants' Motion for Summary Judgment that, when she returned to work in November of 2019, "Ms. Moran forced [her] back on leave for two days to allow Ms. Moran to decide what to do with [her]," and that Defendants did not pay Plaintiff for the two days she was on leave.  (Pl.'s Opp'n at 27, ECF No. 24-1.)  The only basis Plaintiff has to support this contention is an unsigned, unnotarized document labeled "Meeting Notes" from November 25, 2019.  (ECF No. 24-17.)  Such an unsigned, unsworn document is not admissible evidence which may be used in opposition to a Motion for Summary Judgment.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 27 (1970); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

Accordingly, there is no genuine dispute of fact over whether Defendants forced Plaintiff to take FMLA leave.

Fourth, transferring Ms. Harvey to the Clifton branch did not constitute an adverse employment action. The Fourth Circuit has established that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action...." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999)). Ms. Harvey argues that the transfer resulted in reduced supervisory duties and diminished responsibilities. However, Ms. Harvey provides no evidence in the record that suggests any diminishment in responsibilities or supervisory duties. Rather, the record reflects that Defendants' transfer of Ms. Harvey from the Waverly branch to the Clifton branch was in keeping with its transfer policy. (*See* Transfer Policy, ECF No. 18-7; Harvey Dep. at 78-81, ECF No. 18-6.) Ms. Harvey also acknowledges that she retained her position as Branch Manager and has maintained her core duties, rank, classification, vacation days, personal leave, and medical benefits. (Harvey Dep. at 78-81, ECF No. 18-6.)

Moreover, Ms. Harvey had been transferred multiple times in the past for a variety of reasons, and testified that, during her employment with the Library, she has worked in "[m]ore than likely all of" the 21 neighborhood branches. (Harvey Dep. at 31, ECF No. 18-6.) Although Ms. Harvey may personally believe the transfer to the Clifton branch was an adverse employment action, the record reveals that management considered both the library's needs and Ms. Harvey's strengths to place her there. (*See* Moran Dep. at 183-188, ECF No. 24-6.)

Ms. Harvey simply has not established any negative effect of her transfer to the Clifton branch. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) ("The question is whether there was a change in the terms or conditions of [plaintiff's] employment which had a 'significant detrimental effect' on [plaintiff's] opportunities for promotion or professional development" and "speculation about the future adverse consequences of a reassignment may not rise to the level of a genuine dispute").

Fifth, although Plaintiff asserts she was "banned" from the Waverly branch, the record reveals that she was never banned from the Waverly branch. Instead, the record reveals that, when Ms. Harvey was supposed to be at the Clifton branch for a meeting with Ms. Campbell and Mr. Malveaux, she was at the Waverly branch without first informing her supervisors. (12/16/2019 Campbell Email, ECF No. 24-18; Campbell Dep. at 187-189, ECF No. 18-12; *see also* Am. Compl. ¶ 24, ECF No. 5.) Ms. Campbell and Mr. Malveaux directed Ms. Harvey to request approval in writing in the future before going to the Waverly branch. (*Id.*) Ms. Harvey received an email from Ms. Campbell memorializing these events and confirming that Ms. Harvey would "not to come to [the Waverly branch] without a written request via email and [Ms. Campbell's] confirmed presence when that request is approved. (12/16/2019 Campbell Email, ECF No. 24-18.) There is no dispute that an employer may manage its employees and "not everything that makes an employee unhappy is an actionable adverse action." *Thorn v. Sebelius,* 766 F. Supp. 2d 585, 599 (D. Md. 2011). Ms. Harvey fails to show how getting approval before visiting the Waverly branch negatively impacted her employment.

Sixth and finally, Ms. Harvey also asserts that, before she was transferred, Ms. Moran told her to resign. While Ms. Moran's testimony disputes this contention, whether Ms. Moran

did or did not tell Ms. Harvey to resign is not a *material* fact in dispute. The record is clear that Ms. Harvey did not resign and that she continues to be employed as Branch Manager of the Clifton branch. Nor is there anything in the record to suggest that Ms. Harvey was "constructively discharged." Constructive discharge occurs when an "employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004). The record is completely devoid of such facts. In sum, there is no dispute that Ms. Harvey did not face an adverse employment action.

### III.   Causal Connection

Even assuming Ms. Harvey engaged in protected activity *and* experienced an adverse employment action, she has failed to show a causal connection between her engaging in protected conduct and the adverse employment action. Under Title VII, this means that Plaintiff must show that her protected activity was the "but for" cause of the adverse employment action. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). The United States Court of Appeals for the Fourth Circuit has held that "proximity in time between the protected activity and the adverse employment action may be sufficient to establish the causation requirement" of the *prima facie* case. *McGrath-Malott*, 565 F. Supp. 2d at 671 (citing *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998)). This Court has held that an inference of a causal connection exists where the adverse action occurs "shortly after learning of the protected activity." *Cepada v. Bd. of Educ. of Baltimore County*, 814 F. Supp. 2d 500, 515 (D. Md. 2011). Such presence of a "close" temporal relationship between the protected activity and the alleged adverse action

can be sufficient to establish a causal connection at the pleading stage. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that alleged "temporal proximity" must be "very close" to satisfy this third element). The Fourth Circuit has not set forth a specific timeframe for what constitutes "very close." *Pascaul v. Lowe's Home Centers, Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006). However, in cases where the temporal proximity is "missing," "courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

Plaintiff submitted her EEOC complaint in 2016 and asserts the first alleged adverse employment action occurred in 2018 when Ms. Moran issued her a reprimand. Such a lengthy gap between Plaintiff's protected activity and her alleged adverse employment actions does not show the temporal proximity required to establish a retaliation claim, and indeed, serves to "negate the inference of discrimination." *See Johnson v. United Parcel Service, Inc.*, No. RDB-14-4003, 2016 WL 4240072, at *6-7 (D. Md. Aug. 11, 2016) (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). There are simply no facts suggesting any causal nexus between Ms. Harvey's protected activity and her alleged adverse employment actions.

## IV.    Pretext

Nevertheless, even if Ms. Harvey could establish a *prima facie* case for retaliation, she cannot prevail under this claim because the Defendants have put forward a legitimate, nondiscriminatory reason for all of their actions, and Ms. Harvey has not carried her burden of showing such reasons were mere pretext for discrimination. In fact, Ms. Harvey has made no effort to establish that any of Defendants' actions were in any way discriminatory.

Defendants have put forward several non-retaliatory reasons for their actions, and Harvey cannot show that these explanations are pretextual. Defendants have presented clear evidence that: Defendants initiated an investigation at Ms. Harvey's request regarding a new custodian; Ms. Harvey was given a written reprimand in 2018 for her "harsh" tone used with the new CEO; that during an October 7, 2019 meeting, Ms. Harvey "was told of staff complaints, customer complaints, and accusations from current and former staff at the Waverly Branch Library"; and Ms. Harvey was issued a Performance Improvement Plan for her ongoing performance issues with respect to her interactions with colleagues. (Harvey Dep. at 40, ECF No. 18-6; Moran Dep. at 168-170, ECF No. 24-6; 10/16/2019 Harvey Email to Heidi Daniel re Meeting with HR and NLS, ECF No. 24-16; 9/19/2019 Email Exchange, ECF No. 24-9; Anderson Dep. at 78-83, 85-88, ECF No. 24-4; Harvey Dep. at 43, ECF No. 24-2; PIP, ECF No. 18-13; Letter of Expectations, ECF No. 18-14.)

In the face of these reasons proffered by Defendants, Ms. Harvey makes no showing that Defendants' explanations are "'unworthy of credence'" nor does she "offer[ ] other forms of circumstantial evidence sufficiently probative of" the retaliation. *See Mereish v. Walker*, 359 F.3d 330, 332 (4th Cir. 2004); *see also McGrath-Malott*, 565 F. Supp. 2d at 670-71. Accordingly, even if Ms. Harvey could establish her *prima facie* case for retaliation, which she cannot, she also cannot establish that the Defendants' provided reasons for their actions were pretextual. Her claim for retaliation fails as a matter of law and summary judgment shall be entered in favor of the Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 18) is GRANTED, and summary judgment shall be ENTERED in favor of Defendants on the sole count of the Plaintiff's Amended Complaint (ECF No. 5).

A Separate Order follows.

Dated: August 13, 2021

_____/s/_____
Richard D. Bennett
United States District Judge
